UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT MARVIN McPHILLIPS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

Case No. 13-cv-13557
Hon. Matthew F. Leitman

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF #10) AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF #14)

Plaintiff Robert Marvin McPhillips ("Plaintiff") seeks judicial review of the decision of Defendant Commissioner of Social Security (the "Commissioner") to deny his applications for Social Security Disability Insurance benefits and Supplemental Security Income.  (*See* Complaint, ECF #1.)  Before the Court are summary judgment motions by both parties.  (*See* Plaintiff's Motion, ECF #10; *see also* the Commissioner's Motion, ECF #14.) For the reasons set forth below, the Court **GRANTS** the Commissioner's motion (ECF #14) and **DENIES** Plaintiff's motion (ECF #10).

## PROCEDURAL HISTORY

On October 9, 2010, Plaintiff was injured in a motorcycle accident. (*See* TR at 25.) Plaintiff thereafter filed an application for disability insurance benefits on October 25, 2010. (*See id*.) Plaintiff also filed an application for supplemental security income on December 1, 2010. (*See id.*) The Commissioner initially denied Plaintiff's applications on April 28, 2011. (*See id*.) Plaintiff then filed a written request for hearing. (*See id.*) This hearing was held on February 27, 2012, before Administrative Law Judge Regina Sobrino (the "ALJ"). (*See id.*) The ALJ determined that Plaintiff was "not disabled" under the Social Security Act (the "Act"), and she denied Plaintiff's applications for benefits and supplemental income. (*Id.* at 36.)

Plaintiff administratively appealed the ALJ's decision (*see id.* at 18), and the Social Security Administration's Appeals Council denied his appeal on June 18, 2013 (*See id.* at 1-3). Plaintiff then filed this action. (*See* ECF #1.) The parties have each now filed motions for summary judgment. (*See* ECF ## 10, 14.)\

## APPLICABLE LAW

**A.    Framework for Social Security Determinations**

"The Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in 'substantial gainful activity.'" *Combs v. Comm'r of Soc.*

2

*Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant qualifies as disabled "if []he cannot, in light of [his] age, education, and work experience, 'engage in any other kind of substantial gainful work which exists in the national economy.'" *Id.* (quoting 42 U.S.C. § 423(d)(2)(A)).

Under the authority of the Act, the Social Security Administration (the "SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The five steps are as follows:

> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. [20 C.F.R.] § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.
>
> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493 U.S. 521,

> 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.
>
> In the fourth step, the SSA evaluates claimant's "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.;* § 404.1560(c)(1).

*Combs,* 459 F.3d at 642–43. "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that []he is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If the analysis reaches the fifth step, as happened here, the burden transfers to the Commissioner. *See Combs*, 459 F.3d at 643. At that point, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could

4

perform given [his residual functional capacity ("RFC")] and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

## B.  This Court's Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited:  the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  If substantial evidence supports the Commissioner's decision, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286 (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence

5

standard "presupposes ... a zone of choice within which the decisionmakers can go either way, without interference by the courts") (internal quotation marks omitted).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512–13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.,* 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## RELEVANT FACTUAL BACKGROUND

A.  **Plaintiff's and Vocational Expert's Testimony**

   *1. Plaintiff's Testimony*

At the administrative hearing before the ALJ, Plaintiff identified multiple medical conditions and ailments that affect him. For example, Plaintiff testified that he has problems moving his neck and that his neck "aches when [he tries] to turn around." (TR at 45.) Plaintiff also said that he suffers from "pain in [his right] wrist" every day that requires him to take Lyrica, a pain management medication. (*Id.* at 45-46.) According to Plaintiff, the problems with his wrist also

6

prevent him from gripping certain items like pens and pencils. (*See id.* at 46.) Plaintiff further testified that he had a "spinal fusion," which led to weakness in his right side, hip pain, and problems standing or walking for more than five minutes at a time. (*Id.*) This weakness, Plaintiff contends, prevents him from lifting more than seven pounds and has caused him problems when he bends at the waist and when he climbs stairs. (*See id.* at 47-48.) Plaintiff also says he has difficulty concentrating (*see id.* at 47), that he was diagnosed with depression (*see id.* at 53), and that he suffers from "some blurriness and some double vision" (*id.* at 49), short-term memory loss (*see id.* at 56), frequent headaches (*see id.* at 57), and dizziness (*see id.*). Plaintiff also explained that he suffers from "very restless" nights, and that, despite taking "medicine to sleep [] a lot of times [he] still [is unable] to sleep, so [he] do[es] a lot of napping in the daytime." (*Id.* at 55.)

### 2. *Vocational Expert's Testimony*

At Plaintiff's hearing, the ALJ heard testimony from vocational expert Stephanie Leech ("Leech"). The ALJ first asked Leech whether a hypothetical person with some of the limitations described by Plaintiff would be able to perform Plaintiff's previous jobs as an asphalt raker and rolling machine operator. Leech testified that such a person would not be able to perform these jobs:

> Q: Well please assume someone who's done the work that Mr. Phillips has done. And I want you to assume a person who was born in 1966. I'd like you to assume a person who has a tenth grade

7

education. Assume a person cannot lift, carry, push or pull more than five pounds frequently, no more than ten pounds occasionally. And regarding pushing and pulling, … should be no frequent pushing or pulling at all. Assume a person who cannot do tight gripping with the right hand. That's the dominant hand. And the person should not climb ladders, should not have to kneel, crouch, or crawl. Can only occasionally climb stairs, balance, or stoop. Assume a person who's limited to no more than frequent handling and fingering with the right hand. Again, that's the dominant hand. The person should not need to reach above shoulder level. And reaching in other directions also no more than frequent. A person should not be exposed to hazards or to vibrations. He should not have to drive as a work duty. Assume a person limited to simple, routine work. The work should be low-stress, meaning no fast-paced work, no work involves [sic] quotas, no assembly line work. Speed should not be critical in the work. Someone with those limitations could not do the jobs Mr. Phillips has done, right?

A: That is right.

(*Id.* at 61-62.)

Leech then opined, however, that there are "other jobs in the regional or national economy that a person with [the above-described] limitations and vocational factors could do." (*Id.* at 62.) Some of these jobs included office clerk, inspector, and surveillance system monitor positions. (*See id.*) The ALJ then asked if Leech were to add the assumption that the person "should have no more than occasional contact with coworkers, supervisors, or the public[,] does that

8

affect the ability to do these jobs?" (*Id.* at 63.) Leech responded that it would reduce, but not eliminate, the number of available jobs for that hypothetical person. (*See id.* at 63-64.) The ALJ finally asked Leach if the jobs she listed would "require the person to rotate the neck more than occasionally." (*Id.* at 64.) Leach answered that some of the positions (such as an inspector) may "require more than occasional" neck flexing and rotating, but others (such as an office clerk) would not. (*Id.*)

**B.     The ALJ's Findings and Relevant Medical Evidence**[1]

In her decision, the ALJ first determined that "claimant has not engaged in substantial gainful activity since October 9, 10, 2010, the alleged onset date [of disability]..." (*Id.* at 27.) The ALJ then concluded at step two that the claimant had a number of "severe impairments" that "more than minimally limit [Plaintiff's] ability to engage in work related activities." (*Id.*) These "severe impairments" included "degenerative disc disease, residuals of right wrist fracture, depression, an anxiety-related disorder, and an attention deficit hyperactivity disorder." (*Id.*)

Despite these "severe impairments," in step three of the evaluation process, the ALJ held that none of the impairments, or their combination, "meets or medically equals the severity" of one of the SSA's special list of impairments. (*Id.*) In other words, the ALJ found that Plaintiff was not conclusively presumed

---

[1] The Court has conducted an independent review of Plaintiff's medical records and will incorporate comments and citations as necessary throughout this Opinion.

9

disabled. The ALJ discussed Plaintiff's medical records in this section of her opinion, and she explained why his impairments, while severe, did not satisfy the statutory definition of disability that would entitle Plaintiff to benefits. (*See id.* at 28-30.) For example, the ALJ found that Plaintiff's "degenerative disc disease does not satisfy the criteria…as [Plaintiff] does not have sensory or reflex loss; spinal arachnoiditis; or lumbar spinal stenosis resulting in psuedoclaudication. [Plaintiff''s] right wrist fracture does not satsifiy the criteria … as there is no evidence of nonunion." (*Id.* at 28.)

Likewise, the ALJ determined that Plaintiff's mental impairments did not lead to the conclusion that Plaintiff was conclusively disabled under step three of the five-step evaluation process. (*See id.*) The ALJ first observed that the Plaintiff had a "mild restriction" in the activities of daily living and "mild difficulties" with social functioning. (*See id.*) The ALJ then reviewed the record and found that Plaintiff had previously indicated "anxiety and worry did not interfere with his daily functioning." (*Id.*) Plaintiff also denied having "any problems getting along with family, friends, neighbors, and others." (*Id.*; *see also* TR at 210.) The ALJ also noted that a consulting psychologist who examined Plaintiff "stated that [Plaintiff] would likely relate well to coworkers and supervisors, and would likely handle constructive criticism well." (*Id.; see also* TR at 465.)

Finally, "with regard to concentration, persistence, or pace," the ALJ found that the Plaintiff had only "moderate difficulties." (*Id.* at 29.) The ALJ found that Plaintiff's "ability to pay bills, watch television and go to the movies on a regular basis indicates that his ability to concentrate is not more than moderately limited." (*Id.*) In addition, "[m]edical records dated November 16, 2010 indicate that [Plaintiff's] attention and concentration were within normal limits." (*Id.*; *see also* TR at 374-375.) The ALJ also noted that while a doctor who examined Plaintiff "stated that [Plaintiff's] cognitive abilities were likely within the below average range … he demonstrated strengths in general fund of information, ability to perform mathematical equations and ability to identify how pieces create a whole." (*Id.; see also* TR at 464.)

The ALJ then moved to step four of the evaluation and determined Plaintiff's RFC. (*See id.* at 30-36.) This review again included a thorough consideration of "all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence…." (*Id.* at 30.) After "careful consideration of the entire record," the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work [as defined by the applicable regulations] except that he is limited to no climbing of ladders; occasional climbing of stairs, stooping and balancing; no kneeling, crouching, or crawling; no reaching above shoulder level with the right (dominant) arm; no tight gripping with the right

>  hand; frequent handling, fingering, and reaching in other directions; no exposure to hazards or vibration; no more than frequent flexion, extension, or rotation of the neck; simple, routine work; low stress work (no fast-paced work, no work that involves quotas, no assembly line work); and work in which speed is not critical.

(*Id.*)

In this section of her opinion, the ALJ summarized, but did not credit, all of Plaintiff's testimony regarding his claimed ailments. The ALJ explained that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible because they are not fully supported by objective medical and other evidence of record." (*Id.*) Specifically, the ALJ cited numerous examinations with doctors during which Plaintiff rated his pain "at 0 on a scale of 0 to 10, where 10 is the worst." (*Id.* at 32-33; *see also id.* at 706, 708.) Plaintiff also told his doctors that he had no problems walking and his "[n]eurological and vascular exams were within normal limits." (*Id.* at 34.) The ALJ also noted that Plaintiff "has not pursued treatment from a psychiatrist, psychologist, or mental health counselor for any psychological symptom or condition." (*Id.*) Following her discussion of Plaintiff's RFC, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a rolling machine operator and raker. (*See id.*)

Finally, in step five of the evaluation process, the ALJ determined that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform…" (*Id.* at 35.) In this stage, the ALJ credited the vocational expert's testimony that a hypothetical person with Plaintiff's limitations "would be able to perform the requirements of representative occupations such as office clerk … [and] surveillance system monitor." (*Id.*) The ALJ therefore concluded that the Plaintiff "has not been under a disability, as defined in the [Act]…" (*Id.* at 36.)

## **ANALYSIS**

Plaintiff appears to make two arguments in his motion for summary judgment. Neither is persuasive. First, Plaintiff argues that the Commissioner "erred as a matter of law in failing to properly evaluate the medical records and opinions of evidence, and thereby, formed an inaccurate hypothetical that did not accurately portray [Plaintiff's] impairments." (*See* Pla.'s Brief at 8, Pg. ID 781.) Plaintiff has not, however, cited or specifically referenced a single piece of medical evidence that the ALJ failed to consider. In fact, while Plaintiff asks "that the existing medical record be reevaluated" (*id.* at 12, Pg. ID 785), his brief is entirely without any citation to the medical record. His argument is also woefully underdeveloped and contains no discussion about what specifically the ALJ failed

13

to include in her hypothetical questions. "Plaintiff cannot simply make the claim that the ALJ committed an error, while leaving it to the Court to scour the record to support this claim … And, the court is not obligated to make plaintiff's case for them or to wade through and search the entire record for some specific facts that might support [his] motion." *Terrell v. Comm'r. of Soc. Sec.*, 12-cv-11781 at *9 (E.D. Mich. Sept. 10, 2013). Given that Plaintiff's counsel was also counsel of record in *Terrell*, he should have been well aware of these failings before filing his instant motion.

Indeed, this is far from the first time Plaintiff's counsel has made these unsupported arguments. In *Fielder v. Comm'r. of Soc. Sec.*, 13-cv-10325, 2014 WL 1207865 (E.D. Mich. Mar. 24, 2014), Plaintiff's counsel filed a brief that contained the same legal argument (in most part verbatim) and undeveloped analysis that Plaintiff has presented here. The Chief Judge of this Court, finding Plaintiff's arguments were waived, noted that, as is the case here, "Plaintiff's summary judgment brief lacked any survey, much less meaningful discussion, of the medical record…" *Id.* at *1. The Court also observed that "this reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel." *Id.* at *1, n.1. *See also Dice v. Comm'r. of Soc.*

14

*Sec.*, 12-cv-11784, 2013 WL 2155528 at *7 (E.D. Mich. Apr. 19, 2013) (finding in a case Plaintiff's counsel filed that a plaintiff "offer[ed] no basis whatsoever for the Court to conclude that the ALJ's decision is not supported by substantial evidence and offers no factual or legal basis for the Court to conclude that the ALJ committed reversible error…"); *Pawlowski v. Comm'r. of Soc. Sec.*, 13-cv-11445, 2014 WL 3767836 at *5 (E.D. Mich. July 31, 2014) (denying summary judgment to client of Plaintiff's counsel in part because "[p]laintiff's argument fails as his entire discussion of this matter is limited to several pages of legal standards and a few vague references to his testimony and medical records. Plaintiff does not discuss why he believes the ALJ erred, what medical records, opinions, or evidence the ALJ failed to properly consider, or what additional impairments the ALJ allegedly failed to include in his hypothetical questions to the [vocational expert]").

The Court echoes these concerns and instructs Plaintiff's counsel to ensure that future filings "advance properly supported arguments that rest upon (and cite to) the facts of a particular case." *Fielder* at *1, n.1.

Moreover, Plaintiff's attack on the ALJ's hypothetical questions fails because the ALJ is required to incorporate in her hypothetical questions only those limitations that the ALJ finds credible and supported by the record. *See, e.g., Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)

15

("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact").  That is exactly what the ALJ did in this case, and Plaintiff has not directed the Court to any medical evidence that supports a finding that the ALJ erred.

Plaintiff's second argument is, apparently, that the ALJ erred in finding that Plaintiff's testimony about his medical conditions was not fully credible.  (*See* Pla.'s Br. at 12, Pg. ID 785.)  Like his first argument, Plaintiff has not cited any medical evidence to support his claim of error, and the Court therefore finds this argument unsupported.  *See, e.g., Fielder*, *supra*, at *1 (internal quotation marks omitted) ("Plaintiff has [] failed to provide any factual basis for his challenge to the ALJ's assessment of credibility").

Furthermore, an ALJ's credibility determination is due "great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Daniels v. Comm'r of Soc. Sec.*, 153 Fed. App'x 485, 488 (6th Cir. 2005) ("Claimants challenging the ALJ's credibility findings face an uphill battle"). This Court is also hesitant to disturb the ALJ's rejection of Plaintiff's testimony because "there seem[s] to be demonstrable discrepancies between what the [Plaintiff] said on the stand and what the written

16

record shows." *Gooch v. Sec'y of Health and Human Svcs.*, 833 F.2d 589, 592 (6th Cir. 1987). As the ALJ cited, for example, Plaintiff rated his pain "at 0 on a scale of 0 to 10, where 10 is the worst" at multiple doctor's visits. (TR. at 32-33; *see also* TR at 706, 708.) The ALJ also found that Plaintiff "has not pursued treatment from a psychiatrist, psychologist, or mental health counselor for any psychological symptom or condition." (*Id.* at 34.) In this action, the ALJ observed Plaintiff's testimony, weighed that testimony against the record medical evidence, and credited the medical record over Plaintiff's testimony. The Court therefore rejects Plaintiff's claim that the ALJ's conclusion was not supported by substantial evidence and/or that the ALJ erred in finding Plaintiff's testimony not fully credible.

As detailed above, where there is substantial evidence to support the ALJ's decision, as there is here, this Court cannot reverse that judgment "even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286. For all of the reasons explained in this Opinion, the ALJ's findings were supported by substantial evidence and the Court will not disrupt her findings.

## **CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF #14) and **DENIES** Plaintiff's Motion for Summary Judgment (ECF #10).

                                                s/Matthew F. Leitman
                                                MATTHEW F. LEITMAN
                                                UNITED STATES DISTRICT JUDGE

Dated:  October 10, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 10, 2014, by electronic means and/or ordinary mail.

                                                s/Holly A. Monda
                                                Case Manager
                                                (313) 234-5113